IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 14-05847 (ESL)

RICHARD OLMEDA MONTALVO

Debtor                                          CHAPTER 7

RICHARD OLMEDA MONTALVO                         ADV. PROC. NO. 14-00246 (ESL)
    Plaintiff

        vs.

AUTORIDAD DE ACUEDUCTO Y
ALCANTARILLADOS ("PRASA")
    Defendant

OPINION AND ORDER

This case is before the court upon the *Motion to Dismiss* (Docket No. 15) filed by defendant PRASA (hereinafter referred to as "PRASA" which in the Spanish language the acronym is AAA which stands for Autoridad de Acueductos y Alcantarillados) and the *Opposition* thereto filed by the Plaintiff and/or Debtor (Docket No. 21). PRASA sustains that the court lacks subject matter jurisdiction because the case is not a core proceeding since it is a matter of state law and the Debtor is precluded by the exhaustion of administrative remedies doctrine to seek relief because he commenced an administrative appeal procedure with PRASA. PRASA also argues that the complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) for which relief can be granted on an alleged violation of the automatic stay. For the reasons stated below, the *Motion to Dismiss* is hereby denied.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

-1-

Procedural Background

The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on July 16, 2014 (Lead Case No. 14-05847[1], Docket No. 1). The 341 meeting was held and closed on August 13, 2014 (Lead Case, Docket Nos. 5 & 10). On August 26, 2014, the Debtor filed a *Motion Submitting Amended Schedule F and Certifying Mailing of Notice of 341 Meeting*, (Lead Case, Docket No. 11) to include PRASA and PRANF (acronym in the Spanish language for "Programa Reducción Agua No Facturada") in his Schedule F- Creditors Holding Unsecured Nonpriority Claims for a disputed claim in the amount of $1,982.89. On September 4, 2014, PRASA filed proof of claim #2-1 for water and sewer service in the amount of $370.39.

Subsequently, on October 16, 2014, the Debtor filed an adversary proceeding premised upon PRASA's continuing collection efforts which allegedly constitute a willful violation of the automatic stay under 11 U.S.C. §362(a)(1, 6), as the amounts requested by PRASA originate from an alleged pre-petition cause of action; namely when the Debtor began using the water service in his new residence (Docket No. 1). Plaintiff's factual allegations as to PRASA's alleged willful violation of the automatic stay are as follows: (i) on May 1, 2014, Plaintiff requested PRASA to transfer his water service contract from his previous residence at Berwin Estates, Calle 2C11, Rio Piedras, PR, to his new residence at 602 Blvd Media Luna Apt 4502, Terrazas Parque Escorial, Carolina PR; (ii) that on that day he paid the outstanding balance of $413.38 owed on the account, in order transfer his water service account to the new residence; (iii) on May 19, 2014, Plaintiff contacted PRASA by phone, and it alleged having no knowledge of the request to transfer account, thus, Debtor reiterated the same; and (iv) on August 19, 2014, the Debtor contacted PRASA again by phone, to report an interruption in the water service of his home. He was informed that the service was interrupted due to a water line being repaired. PRASA alleged that it did not have knowledge of any request for transfer of his account, thus Debtor insisted again on his transfer request. The water service returned that same night as

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 14-05847.

-2-

informed by PRASA personnel (Docket No. 1, pg. 6, ¶¶ 19 & 20, and Exhibit 1- Affidavit). Plaintiff's complaint for injunctive relief also includes the following causes of action: (i) PRASA discriminated against Debtor pursuant to 11 U.S.C. §525 by refusing to reconnect the water service on account of a dischargeable debt; and (ii) PRASA's refusal of the Debtor's surety bond and the continued demand for a cash deposit of $500 constitutes a violation of 11 U.S.C. §366.

Also, on said date, the Plaintiff filed an *Urgent Motion to Order Autoridad de Acueductos y Alcantarillados (PRASA) to Reinstall the Water Service and Request for an Emergency Hearing* (Docket No. 2). On October 23, 2014, PRASA filed its *Opposition to Plaintiff's Urgent Motion requesting PRASA to Reinstate Water Service* (Docket No. 10). On October 23, 2014, a hearing was held in which the court ordered as follows: "Parties informed that they have reached an agreement re[garding] the urgent motion scheduled for today on an expedited basis. The agreement is as follows: Debtor will pay a deposit in the amount of $125 on or before October 30, 2014. Debtor will pay the amount of $55 due for post-petition services on or before December 1, 2014. The Debtor will visit today the PRASA offices to request an account number in order to have water service reconnected today." (Docket No. 11).

On November 17, 2014, PRASA filed a *Motion to Dismiss* (Docket No. 15) arguing as follows: (i) Plaintiff's pleadings disclose that PRASA did not willfully violate the automatic stay because the alleged violation occurred on August 25, 2014 which was before PRASA was included in the bankruptcy case as a creditor. The Debtor amended Schedule F on August 26, 2014 to include PRASA; (ii) "…even if we assume that the Plaintiff included PRASA from the beginning of the bankruptcy petition, it would still not be a violation of the automatic stay, as the water service was not suspended for collection purposes. PRASA suspended the water service to the Debtor's residence as it was an unlawful connection to PRASA's system, in violation of state law regulations. The water was disconnected because the residence did not have a registered account with PRASA;" (iii) "The fact that the Plaintiff filed [for] bankruptcy does not mean that PRASA is prohibited from exercising its police and regulatory powers to

protect its aqueduct infrastructure. In this case, the Plaintiff's registered water service in the Berwin Estates residence was not interrupted, the water interruption, occurred in a residence where there was no registered service; (iv) the interrupted water service and the imposition of a fine and administrative fees is a state law matter that arises from PRASA's Regulation No. 5129 and not from the Bankruptcy Code. The Plaintiff is interrupting the administrative process which he initiated and is hampering PRASA from making a determination as to the imposition of a fine which is not barred by the automatic stay. The administrative procedure must conclude, before any judicial relief is granted; (v) "If this forum assumes jurisdiction, PRASA's rights will be entrenched, as it will not be given the opportunity to develop a factual record. Moreover, the purpose of the exhaustion of administrative remedies doctrine would be hindered as the Plaintiff is weakening PRASA's police and regulatory powers;" and (vi) "If it weren't for the stay violation claim, this matter would not be a core proceeding. But as stated beforehand, from the facts pleaded in the complaint no stay violation occurred, the only claims directly related to bankruptcy was the installment of the water utility for the Debtor's residence and the amount of deposit that PRASA would accept. This controversy has been already resolved." On December 1, 2014, Plaintiff filed a *Motion Requesting Extension of Time to Oppose Motion to Dismiss by PRASA and Trustee (*Docket No. 16) and the same was granted on December 3, 2014 (Docket No. 17).

On December 11, 2014, the Plaintiff filed his *Opposition to Defendant PRASA's Motion to Dismiss* (Docket No. 21) arguing that: (i) the complaint alleges additional actions taken by PRASA after acquiring knowledge of the bankruptcy, which constitute willful violations of the automatic stay pursuant to 11 U.S.C. §362(a)(1, 6). These allegations are properly alleged in the complaint and sustained by Plaintiff's sworn statement; (ii) from August 26, 2014 to October 23, 2014, PRASA deprived Plaintiff of water service, despite having knowledge of the automatic stay, and continued threatening Plaintiff with fines and penalties as well as criminal proceedings; (iii) The application of section 362(b)(4) is to be narrowly construed and the same is not automatic. Even if PRASA is entitled to this exemption pursuant to section 362(b)(4), the

same forbids the enforcement of money judgment against debtor. "PRASA would still be in violation of the [a]utomatic [s]tay by enforcing the parts of its regulatory scheme that require debtor to pay a larger security deposit ($500.00) for the sole reason of allegedly violating PRASA's regulations, as well as to compensate PRASA for administrative expenses. Coercing Plaintiff to pay a penalty deposit and administrative expenses in exchange for having his water service reconnected would still be a violation of the [a]utomatic [s]tay, even when the imposition of said penalties might be allowed under 11 U.S.C. §362(b)(4);" (iv) "PRASA's own negligence in processing the repeated requests of Plaintiff, are the cause of the alleged lack of a registered use on the residence of Plaintiff;" (v) PRASA's request for abstention was not served pursuant to Fed. R. Bankr. P. 5011(b), 9014 and 7004; (vi) an action to seek damages for an automatic stay violation is a core proceeding that "arises under" Title 11 and thus, under the province of the bankruptcy courts; (vii) the exhaustion of administrative remedies doctrine is misplaced because in this case there is no system of administrative review in place to address the automatic stay violation raised by Plaintiff in the adversary proceeding; and (viii) section 106(a)(1) and (2) provides that sovereign immunity is waived as to a governmental unit regarding certain sections of the Bankruptcy Code, including section 362. Thus, the exhaustion of administrative remedies, which may otherwise be jurisdictional outside of bankruptcy, becomes unnecessary as to a cause of action regarding a claim of the government against the bankruptcy estate. There is no requirement of exhaustion of remedies as a prerequisite for a violation of the automatic stay. The exhaustion of remedies is unnecessary when the agency has no faculty to provide the relief sought (Docket No. 21).

On December 17, 2014, PRASA filed a *Motion for Leave to Reply to Plaintiff's Opposition to PRASA's Motion to Dismiss* (Docket No. 23) and the same was granted on December 22, 2014 (Docket No. 25). On January 9, 2015, PRASA filed its *Reply to Plaintiff's Opposition to PRASA's Motion to Dismiss* (Docket No. 29) arguing that: (i) PRASA's action is a post-petition action against Plaintiff and thus, 11 U.S.C. §362(a)(1, 6) is inapplicable to the instant case; (ii) on August 25, 2014, PRASA disconnected the water and at that time PRASA

was unaware that Debtor was responsible for the unauthorized water use. PRASA became aware that Debtor was responsible for such unauthorized use after PRASA disconnected the water service and Debtor visited PRASA's offices. On August 26, 2014, PRASA issued an administrative decision against Plaintiff and the same was appealed; (iii) "….by commencing a post-petition administrative action whereby PRASA sought to impose a fine and an administrative expense related to the fine and requested a deposit in order to open a service account with PRASA, PRASA is not collecting a pre-petition claim nor is discriminating against Plaintiff due to the filing of bankruptcy. PRASA is enforcing its Rules and Regulations;" (iv) even if PRASA's action were considered to be pre-petition, the same would be exempted from the automatic stay pursuant to 11 U.S.C. §362(b)(4), given that PRASA is enforcing its police powers. Section 362(b)(4) permits governmental units to enforce its police or regulatory powers without seeking permission from the Bankruptcy Court; (v) "Plaintiff claims that the real goal of PRASA's action is to collect money from Plaintiff, an action unprotected by §362(b)(4). However, it is absurd to think that by disconnecting the unlawful water connection and by initiating an administrative procedure to impose a fine, PRASA's aim is to collect money from Plaintiff in violation of §362(a)(1) and (6);" and (vi) "[i]n its Opposition to PRASA's *Motion to Dismiss*, Plaintiff claimed that he is not responsible for the unauthorized use because he had requested the transfer of the water service from his previous residence to his present residence where the unauthorized use of the water occurred. However, this argument should be presented in the administrative forum where the appeal is pending not in the bankruptcy court as a violation of §362(a)(1) and 362(a)(6)" (Docket No. 29). On January 16, 2015, the Plaintiff file a *Motion for Leave to File Surreply to Defendant's PRASA's Reply to Plaintiff's Opposition to Motion to Dismiss and for Extension of Time to File Surreply* (Docket No. 32) and the same was granted on January 21, 2015 (Docket No. 36).

On January 26, 2015, the Plaintiff filed his *Surreply to Defendant's PRASA Motion to Dismiss* (Docket No. 38) arguing as follows: (i) the issue as to the deposit amount is not moot, given that the actions PRASA took are in clear violation of the stay that left Plaintiff and his

family without water from August 26, 2014 to October 23, 2014; (ii) PRASA's collection actions are clearly post-petition, but the same are actions to collect a claim that arose pre-petition pursuant to 11 U.S.C. §362(a)(1, 6); (iii) Plaintiff commenced using the water service in his residence in Parque Escorial before filing for bankruptcy. Thus, any claim for unauthorized water usage PRASA might have against Plaintiff, arose pre-petition. Any fines, penalties and costs PRASA is charging Plaintiff are all based on its alleged pre-petition claim of unauthorized water usage; (iv) "The application of §362(b)(4), however, is not automatic. State or local governments cannot, by the exercise of their police or regulatory powers, subvert the relief afforded by the bankruptcy laws." In re Dunbar, 235 B.R. 465, 471 (9th Cir. BAP 1999); and (v) Plaintiff has the right to challenge PRASA's defense that the automatic stay is not applicable pursuant to 11 U.S.C. §362(b)(4) (Docket No. 38).

On February 4, 2015, a *Joint Motion Requesting to Re-Schedule PreTrial Hearing or to Convert to Status Conference* (Docket No. 39) was filed jointly by the parties and the same was granted on February 5, 2015 (Docket No. 40).

On February 13, 2015, a status hearing was held in which the parties informed the court that the water services were connected. The Defendant was granted 21 days to supplement the motion to dismiss and the Plaintiff was granted 21 days thereafter to sur-reply. After the briefing is completed, matter will be deemed submitted (Docket No. 43). On March 5, 2015, the parties filed a *Joint Motion for Extension of Time* (Docket No. 45) of ten (10) additional days to file the status of the negotiations or for PRASA to file its supplement to the motion to dismiss. On March 9, 2015, the court granted the *Joint Motion for Extension of Time* (Docket No. 46).

On March 16, 2015, PRASA filed its *Supplemental Motion to Motion to Dismiss* to "…clarify those materials facts alleged in the [c]omplaint which PRASA is assuming as true for the purpose of the *Motion to Dismiss*. PRASA also seeks to clarify the issues of law involved which give rise to PRASA's *Motion to Dismiss*." (Docket No. 48). PRASA argues in its *Supplemental Motion* that: (i) the Plaintiff failed to allege sufficient facts that the $755

requested is a pre-petition debt and that PRASA's refusal to provide service violated 11 U.S.C. §§362, 525; (ii) the $755 payment requested by PRASA is composed of different charges/fees, namely: (a) $55 for post-petition water used; (b) the $200 is for an administrative expense due to PRASA's intervention on August 25, 2014 in which PRASA disconnected Plaintiff's unauthorized water connection. The $200 is a flat fee due to PRASA's intervention with unauthorized water connections pursuant to §4.03(8) of PRASA's Regulation # 5129 ("Código Sobre Temas o Descargas Clandestinas, Hurto de Agua, Manipulación de Contadores u Otros Accesorios Propiedad de la Autoridad de Acueductos y Alcantarillados"). PRASA learned on August 26, 2014, that Plaintiff was responsible for the unauthorized connection, thus as of that date (post-petition) PRASA's claim for the $200 originated; and (c) the $500 was a post-petition deposit request that originated when Plaintiff requested the reconnection of the water service on August 26, 2014. Pursuant to Regulation #5129 in order to provide water service in cases of clandestine connection or discharge, the deposit will be $500 or 5 times the average of the last 6 normal periods of invoicing, whichever is greater; (iii) Plaintiff failed to allege the essential elements of a 11 U.S.C. §525(a) violation, given that PRASA did not refuse to renew a license, permit, or other similar grant. PRASA refused to provide a utility service which is governed pursuant to 11 U.S.C. §366. Moreover, PRASA requested the $200 administrative expense and the $500 deposit pursuant to its rules and regulations. PRASA was not discriminating against Plaintiff; (iv) "[u]nder [11 U.S.C.] §366 a utility is permitted to refuse service 'for any reason which would validly constitute a ground for refusal if that debtor were not in bankruptcy, with the single exception of non-payment for past services;'" Hennen v. Dayton Power & Light Co., 17 B.R. 720, 724 (Bankr. S.D. Ohio 1982); and (v) 11 U.S.C. §366 does not limit the amount that the utility may request as a deposit. In order to determine what constitutes an adequate security deposit request, bankruptcy courts generally defer to state regulations on security deposits.

On April 6, 2015, the Debtor filed a *Motion Requesting Extension of Time to File Plaintiff's Sur-reply PRASA's Supplemental Motion to Motion to Dismiss* (Docket No. 49) and the same was granted on April 7, 2015 (Docket No. 50).

On April 13, 2015, the Plaintiff filed a *Motion for Leave to File Supplemental Motion in Excess of Page Limit* and a *Motion to Supplement Opposition to Defendant's PRASA's Motion to Dismiss* (Docket Nos. 52 & 52-1). Plaintiff's *Motion to Supplement Opposition to Motion to Dismiss* presented the following arguments: (i) on August 26, 2014, PRASA issued a determination imposing fines and charges in the amount of $1,982.89 (See Exhibit 1- Docket No. 52-1) which consisted of a $1,000 fine; $500 deposit; $200 administrative expense; $277.89 for unbilled water; $66.28 of a balance owed and a credit of ($61.28) of a transfer; (ii) after August 28, 2014, PRASA adjusted its request from $1,982.89 to $755.00 of which $700 (the $500 deposit and the $200 administrative expense) constitute a pre-petition debt because a claim arises at the time of the conduct which originates such claim; (iii) "PRASA's claim against Plaintiff for alleged unauthorized reconnection arose by the time Plaintiff requested unsuccessful transfer of service around May 1, 2014, and Plaintiff began using water is his new home;" (iv) "PRASA seeks to contradict Plaintiff by affirming that the imposition of the particular charges of $500 deposit and $200 administrative expenses must be considered post-petition claims as they were imposed post-petition on August 26, 2014;" (v) PRASA's argument that it filed proof of claim #2-1 for the pre-petition water usage, given that it is a different charge from the unauthorized water used is contrary to PRASA's argument regarding the $500 deposit requested pursuant to Section 4.03(a) of Regulation 5129 which provides that, "in order to provide water service in cases of clandestine connection or discharge, the deposit will be $500 or 5 times the average of the last 6 normal periods of invoicing, whichever is greater." "Section 4.03(8) of said Regulation provides that PRASA may impose other charges (in addition to the fine) that are the consequence of water theft, clandestine taking or discharge and meter manipulation;" (vi) the basis for all of the amounts that PRASA alleges Plaintiff owes, stems from the alleged act of unauthorized water reconnection; (vii) PRASA's alleged claim

against Plaintiff arose when Plaintiff's alleged unlawful reconnection occurred, pre-petition, not when PRASA finally decided to do something about it, post-petition; (viii) on August 28, 2014, PRASA after having knowledge of the Plaintiff's bankruptcy case, refused reconnection and tried to collect from Plaintiff $500 deposit as well as $200 in administrative expenses; (ix) on October 1, 2014, PRASA left at Plaintiff's residence another "Notice of Irregular Use," threatening with the fines and penalties, as well as criminal proceedings, if Plaintiff did not visit PRANF's offices to correct the alleged irregularities, even though the water service remained suspended since August 25, 2014 and Plaintiff did visit PRASA on August 26, 2014 and appealed the determination of PRASA; (x) 11 U.S.C. §362(b)(4) must be narrowly construed, given that there are two inquiries, namely; the "public policy" and "pecuniary purpose" tests for determining whether a particular government proceeding falls within the exception of section 362(b)(4). Courts must engage in a fact specific inquiry to determine whether a governmental unit's actions and motivations fall under the public policy or pecuniary purpose test. PRASA's actions do not comply with pecuniary purpose test and the public policy test; (xi) Plaintiff provided a surety bond of $500 instead of a cash deposit which is allowed pursuant to Section 4.03(a) of Regulation #5129 and also permitted under 11 U.S.C §366. PRASA refused to accept the bond; (xii) "…the dual purpose present in PRASA's alleged request for a $500 deposit runs afoul of 11 U.S.C. [§]366(a), as it is collected not merely to protect PRASA from future delinquency, but to punish Plaintiff for pre-petition conduct added to the fact that PRASA also conditioned reconnection to the payment of $200 administrative expense, a pre-petition debt totally unrelated to any form of assurance; (xiii) "In the context of tampering and theft of utility services, the utility has to present some evidence that the debtor was responsible for the tampering, in order to be found in compliance with 11 U.S.C. §366(a);" and (xiv) "A utility service that fails to establish otherwise valid reasons for refusing service, violates both 11 U.S.C. §366(a) and 362" See In re Parks, 2008 WL 2003133 at *5 (Docket No. 52-1).

On May 4, 2015, PRASA filed its *Reply to Plaintiff's Motion to Supplement His Opposition to PRASA's Motion to Dismiss* (Docket No. 64) by which it argued the following: (i)

PRASA stopped the collection of the $1,000 fine due to the illegal use of the water service because Plaintiff on August 26, 2014 sought revision of the fine through PRASA's administrative procedure which is still pending; (ii) "PRASA does not dispute Plaintiff's assertion that the unauthorized water use commenced pre-petition but it is PRASA's contention that said illegal water use continued post-petition and that the $200 administrative expense is a post-petition claim due to PRASA's intervention on August 25, 2014, that is, post-petition. On said intervention, PRASA disconnected the unlawful connection to PRASA's services. Similarly, the $500 deposit request is only a deposit required by PRASA in order to open an account with PRASA; it is not a debt. If Plaintiff decides not to open an account, Plaintiff does not have to pay the deposit. In any event, any deposit paid to PRASA does not become property of PRASA. It only provides assurance of payment. Additionally, said deposit request originated after disconnecting the unauthorized connection to PRASA's water system on August 25, 2014. Thus, the $200 administrative expense and the $500 deposit request arose post-petition and they are not subject to §362 nor §525;" (iii) "the exact date of the commencement of the unauthorized water use is in dispute, it is undisputed that the unauthorized or unregistered use commenced pre-petition and continued post-petition until August 25, 2014;" (iv) the automatic stay does not apply to post-petition actions. After the filing of Debtor's bankruptcy petition, he continued to use PRASA's water service without authorization until August 25, 2014 when PRASA inspected the unauthorized use; (v) "PRASA clarifies that it is not ambiguous; when there is an unregistered service, the water is being used without PRASA's authorization and there is a clandestine taking and meter tampering. Additionally, PRASA's administrative decision dated August 26, 2014 explains Plaintiff's violations of PRASA's Regulations;" (vi) "[c]ontrary to Plaintiff's allegation that PRASA['s] only interest was to bill Plaintiff for unbilled water, in fact, PRASA's only interest was to eliminate the unregistered water use in compliance with its enabling law and regulations;" (vii) Plaintiff states that he attempted since May 1, 2014 to have his water service transferred to his new residence. "The alleged request for transfer is not reflected in PRASA's records. Notwithstanding, it is PRASA's contention that

pursuant to Plaintiff's rental agreement for his new residence, Plaintiff acquired possession of the premises on or before April 1, 2014 at which time the water meter began to reflect an unauthorized consumption. However, this issue is being litigated in the administrative forum;" (viii) PRASA's Administrative Order OA-2009-06 establishes that it does not accept bond deposits that are less than $5,000; and (ix) Section 362(b)(4) refers to the commencement or continuation of a proceeding to enforce a governmental unit's police and regulatory power for pre-petition claims. PRASA's $500 deposit request is not a money judgment and its enforcement of the $200 administrative expense is due to PRASA's post-petition intervention on August 25, 2014 (Docket No. 64).

In this case, the key issue is whether the Plaintiff has established sufficient basis for the alleged violation of the automatic stay that allows the court to draw reasonable inference that the Defendant is liable for the same.

Facts

The following facts are uncontested as stated by PRASA in its *Supplemental Motion to PRASA's Motion to Dismiss*:

1.  PRASA disconnected Plaintiff's connection to PRASA's water system on August 25, 2014.

2.  At the time the service was disconnected, PRASA left at Plaintiff's residence a "Notice of Irregular Use." The notice issued by PRASA through its Unbilled Water Reduction Program (PRANF is the acronym in the Spanish language) stated as follows: "In an inspection carried out today August 25, 2014, we found an irregularity and/or discrepancy between the water service used in this property and the actual information in our records. We have cut-off the service until this situation is corrected."

3.  This notice also advised Plaintiff to visit PRANF's offices and correct the irregularity since not doing so may result in a violation of PRASA's Rules and Regulations pertaining to clandestine water connection and discharge.

4.  On August 26, 2014, Plaintiff visited PRANF's offices and PRASA issued an

administrative decision regarding Plaintiff's unauthorized use of the water service. The decision informed Plaintiff that he needed to pay a total of $1,982.89 which is broken down as follows: $1,000 as a penalty charge, $200 administrative expense; a $500 deposit and $277.89 for water consumed but not billed.

5.   PRASA's representative explained to Plaintiff that in order to reconnect the service, Plaintiff needed to pay the total amount or enter into a payment plan.

6.   On August 26, 2014, PRASA was included in Debtor's amended Schedule F, that is, after PRASA disconnected the water service on August 25, 2014 and after Plaintiff visited PRASA's offices.

7.   On August 28, 2014, Plaintiff visited PRASA's offices and presented the amended Schedule F. PRASA refused to connect the service unless he paid $755 which included $55 for post-petition water consumed, a $200 administrative expense and a $500 deposit.

8.   On October 1, 2014, PRASA left in Plaintiff's residence another notice that stated:  "In an inspection carried out today October 1st, 2014, we found an irregularity and/or discrepancy between the water service used in this property and the actual information in our records. We have cut-off the service until this situation is corrected."

9.   On October 2, 2014, Plaintiff presented to PRASA a surety bond deposit in the amount of $500 to cover the deposit requested by PRASA. However, PRASA refused to accept the bond deposit and continued to demand a $500 cash deposit. (Docket No. 48, pgs. 2-4).

<u>Applicable Law and Analysis</u>

*Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)*

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." <u>Velez-Arcay v. Banco Santander de P.R. (In re Velez-Arcay)</u>, 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.</u>, 748

F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita-Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the

-14-

complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr.D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Rule 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely … toothless.'" Correa v. Arrillaga, 903 F.2d 49, 52 (1st Cir. 1990), quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989).

In this case, the key issue is whether the Plaintiff has established sufficient basis for the alleged violation of the automatic stay that allows the court to draw reasonable inference that the Defendant is liable for the same. In order to so determine, the court must analyse the facts plead in the complaint in light of the legal standard of what constitutes a violation of the automatic stay.

*Violation of the Automatic Stay*

"The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997). The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2015). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" Id. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. See In re Soares, 107 F. 3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." In re Soares, 107 F. 3d. at 975-976.

-15-

The First Circuit in <u>Laboy v. Doral Mortg. Corp.</u> (<u>In re Laboy</u>), 647 F. 3d 367, 374 (1st Cir. 2011) stated the following regarding whether a violation is deemed "willful:" "[a] violation is 'willful' if a 'creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case.'" <u>In re Laboy</u>, 647 F. 3d. at 374 citing <u>In re McMullen</u>, 386 F. 3d 320, 330 (1st Cir. 2004). This court in the case of <u>In re Soto Rios</u>, 2009 Bankr. Lexis 2992 (Bankr. D.P.R. 2009) discussed the standard for a willful violation of the automatic under Section 362(k) and stated the following:

'Section 362(k)(1) allows an individual to recover actual damages, costs and attorneys' fees, and in appropriate circumstances punitive damages when he or she is injured by a willful violation of the automatic stay. <u>See</u> 11 U.S.C. §362(k)(1). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under §362(h) is met if there is knowledge of the stay and if the Defendant intended the actions which constituted the violation." [2] <u>Fleet Mortg. Group. Inc. v. Kaneb</u>, 196 F. 3d 265, 269 (1st Cir. 1994). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorneys' fees be mandatory upon a finding of a willful violation of the stay." <u>Heghmann v. Indorf</u> (<u>In re Heghmann</u>), 316 B.R. 395, 405 footnote 9 (B.A.P. 1st Cir. 2004)(quoting <u>Ramirez v. Fuselier</u> (<u>In re Ramirez</u>), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)); <u>See</u> <u>In re Atamian</u>, 344 B.R. 200, 205 (Bankr. D. Mass. 2006); <u>Parker v. Boston Univ</u>. (<u>In re Parker</u>), 334 B.R. 529, 536-537 (Bankr. D. Mass. 2005). Moreover, a good faith belief in a right to certain property is irrelevant in determining the willfulness in an automatic stay violation. <u>Fleet Mortg. Group Inc. v. Kaneb</u>, 196 F. 3d at 268-269. The burden is on the debtor to prove by a preponderance of the evidence that he suffered damages as a consequence of the violation of the automatic stay. <u>See</u> In re Heghmann, 316 B.R. at 404-405. Under Section 362(k)(1) of the Bankruptcy Code actual damages should only be awarded if there is concrete evidence which supports with reasonable certainty the amount of the award. <u>Id.</u> At 405.' <u>In re Soto Rios</u>, 2009 Bankr. Lexis 2992, *13-14.'"

<u>Torres v. Santander Fin. Servs.</u> (<u>In re Torres</u>), 532 B.R. 195, 200-201 (Bankr. D.P.R. 2015).

Section 362(a)(1) stays, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(1). "Subsection (a)(2) provides for a broad stay of legal proceedings against the debtor that were or could have been commenced prior to the

---

[2] Section 362(k)(1) was previously codified as subsection 362(h) of the Bankruptcy Code.

commencement of the bankruptcy case, or that seek to recover a prepetition claim against the debtor. It includes a stay against the commencement or continuation of administrative, judicial and other actions or proceedings against the debtor, such as interception of tax refunds for payment of debts or revocation of a license due to failure to pay a debt. The stay includes actions seeking injunctive relief or similar relief as well as actions seeking money judgments. It stays appeals in actions against the debtor as well as initial lawsuits. The stay provision of subsection (a)(1) is drafted so broadly that it encompasses all types of legal proceedings, subject only to the exceptions provided in section 362(b)." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2015). "The stay of litigation is limited to actions which could have been commenced before the commencement of the case or which are based upon claims that arose before commencement of the case. A claim arises at the time an obligation is incurred, not when it is due." Id. at ¶362.03[3][a].

> "Section 362(a)(6) stays, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6). "The wording of this provision is somewhat similar to that of section 362(a)(1) but the provision applies to any 'act' whether or not that act is related to an 'action' or a 'proceeding.' Thus, any act taken to collect, assess or recover a prepetition claim against the debtor, whether the act is taken against the estate of against the debtor is stayed." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[8] (16th ed. 2015). 'Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect prepetition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1).' Id. The purpose of section 362(a)(6) is 'to benefit a debtor by preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions.' In re Duke, 79 F. 3d 43, 45 (7th Cir. 1996) citing Matthews v. Rosene, 739 F. 2d 249, 251 (7th Cir. 1984)." In re Torres, 532 B.R. at 201-202.

*Exceptions from the Automatic Stay pursuant to 11 U.S.C. §362(b)(4)*

Section 362(b)(4) excepts from the automatic stay the commencement or continuation of any action or proceeding by a governmental unit, "to enforce such governmental unit's or organization's police or regulatory power, including the enforcement of a judgment other than a

money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. §362(b)(4). However, the exception from the automatic stay under section 362(b)(4) does not extend to all parts of the automatic stay in §362(a). The police power exception under 11 U.S.C. §362(b)(4) specifically excludes actions exercising their police or regulatory power under paragraphs (1), (2), (3) or (6) of subsection (a) of this section. Thus, governmental units remain subject to the provisions of subsection 362(a)(4), (a)(5), (a)(7) or (a)(8). See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.05[5][b] (16th ed. 2015)("The governmental unit may prosecute an action and obtain a judgment or order, but may not take or perfect a lien on property of the estate, setoff claims, or take other action that would violate the provisions of subsection 362(a)(4), (a)(5), (a)(7) or 9a)(8)").  "The purpose of this exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." SEC v. Brennan, 230 F. 3d 65, 71 (2d Cir. 2000); McMullen v. Sevigny (In re McMullen), 386 F. 3d 320, 324-325 (1st Cir. 2004) ("This exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers and/or consumer protection regulations"). "Thus, an action by a governmental unit seeking to enforce compliance with federal or state laws may proceed to a judgment or order. It may proceed even further, to enforcement of the judgment or order, but a governmental unit may not enforce a money judgment against the estate." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.05[5][a] (16th ed. 2015). "Nevertheless, given the expansiveness of subsection 362(a), the exception contained in subsection 362(b)(4) is to be narrowly construed." In re McMullen, 386 F. 3d at 325 citing Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re

Corporacion de Servicios Medicos Hospitalarios de Fajardo), 805 F. 2d 440, 447 (1st Cir. 1986).

"In attempting to apply the §362(b)(4) exception, courts look to the purposes of the law that the government seeks to enforce to distinguish between situations in which a 'state acts pursuant to its police and regulatory power, and where the state acts merely to protect its status as a creditor." Solis v. SCA Rest. Corp., 463 B.R. 248, 251-252 (E.D.N.Y. 2011) citing Safety-Kleen, Inc. v. Wyche (In re Pinewood), 274 F. 3d 846, 865 (4th Cir. 2001)(quoting Universal Life Church, Inc. v. United States (In re Universal Life Church Inc.), 128 F. 3d 1294, 1297 (9th Cir. 1997)); United States ex. Rel. Fullington v. Parkway Hosp., Inc., 351 B.R. 280, 282-283 (E.D.N.Y. 2006).

The courts have developed two (2) interrelated fact intensive tests; namely the "pecuniary purpose" test and the "public policy" test, that require the courts to assess the totality of the circumstances to discern whether a governmental action falls under the 362(b)(4) or whether the same is simply a collection action. See In re McMullen, 386 F. 3d at 325 citing Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F. 3d 1, 9 (1st Cir. 2003); Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo), 805 F. 2d 440, 445, n. 4(1st Cir. 1986); In re Mohawk Greenfield Motel Corp., 239 B.R. 1, 6 (Bankr. D. Mass. 1999); Massachusetts v. New England Pellet, LLC, 409 B.R. 255, 258-259 (D. Mass. 2009) citing In re Universal Life Church Inc., 128 F. 3d at 1297. Under the pecuniary purpose test, the court analyzes the government's proceeding(s) to determine whether the same seek to enforce a matter of public safety and welfare, which favors the stay exception, or its pecuniary interest, which does not. See Solis v. SCA Rest. Corp., 463 B.R. at 252; Massachusetts v. New England Pellet, LLC, 409 B.R. at 259. Thus, the governmental unit satisfies the "pecuniary purpose" test if its actions were not brought

-19-

primarily to benefit the government's pecuniary interest. See  Massachusetts v. New England Pellet, LLC, 409 B.R. at 259. Other courts instead of the "pecuniary purpose" test have applied the "pecuniary advantage" test which consists of determining whether, "the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-à-vis other creditors" rather than focusing on whether the governmental unit seeks property of the debtor's estate. Solis v. SCA Rest. Corp., 463 B.R. at 252 citing United States v. Commonwealth Cos. (In re Commonwealth Cos.), 913 F. 2d 518, 523 (8th Cir. 1990); Jane Doe 1 v. X, Inc. 246 B.R. 817, 820 (E.D. Va. 2000). Under the "public policy" test, the relevant inquiry is whether the government is "primarily trying to 'effectuate public policy' or to adjudicate private rights.'" Massachusetts v. New England Pellet, LLC, 409 B.R. at 259. If the action furthers both public and private interests, then the same should be exempt from the automatic stay if "the private interests do not significantly outweigh the public benefit from enforcement." Chao v. Hosp. Staffing Servs., Inc., 270 F. 3d 374, 390 (6th Cir. 2001).  The governmental unit's action is exempted under section 362(b)(4) if it satisfies at least one of the tests. See Massachusetts v. New England Pellet, LLC, 409 B.R. at 259 ("If either test is satisfied the case is considered an enforcement action").

In determining whether a particular governmental action is exempted from the automatic stay pursuant to section 362(b)(4), the court does not have to pass judgment (review/analyze/question/scrutinize) the legitimacy of any pending administrative procedures because this would conflict "with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts." See Board of Goverors v. McCorp. Financial, Inc., 502 U.S. 32, 40, 116 L. Ed. 2d 358, 112 S. Ct. 459 (1991). However, there is a difference between prosecuting a regulatory action pursuant to the police power exemption and enforcing an order

or judgment which could affect control over property of the estate. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.05[5][b] (16th ed. 2015). The factual allegations in the complaint, if proven, state a legal plausible claim. On the other hand, Defendant has not placed the court at this juncture, in a position to conclude that PRASA is exercising its police or regulatory power.

*11 U.S.C. §366*

Section 366 recognizes the monopoly powers of most utilities (such as electricity, water and gas) and requires that they provide service to a debtor after a bankruptcy petition has been filed. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 366.01 (16th ed. 2015). The purpose of Section 366 is "to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid." Jones v. Boston Gas Co. (In re Jones), 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) quoting Begley v. Philadelphia Elec. Co. (In re Begley), 760 F. 2d 46, 49 (3d Cir. 1985). Section 366 provides in pertinent part as follows:

> "(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment." 11 U.S.C. §366(a) & (b).

Under section 366(a), a utility may not refuse service to a debtor "solely" on the basis of the commencement of a bankruptcy case and unpaid prepetition debts. However, it has been interpreted that the use of the word "solely" in the statutory language of subsection (a), implies

that utilities may refuse service to a debtor premised upon other grounds; such as failure to pay post-petition bills, tampering and or unauthorized utility usage. See Hennen v. Dayton Power & Light Co., 17 B.R. 720, 724 (Bankr. S.D. Ohio 1982); In re Webb, 38 B.R. 541, 544 (Bankr. E.D. Pa. 1984); Memphis Light, Gas & Water Div. v. Farley, 135 B.R. 292, 294 (W.D. Tenn. 1991) citing Hendrickson v. Philadelphia Gas Works, 672 F. Supp. 823 (E.D. Pa. 1987); In re Morris, 66 B.R. 28 (E.D. Mich. 1986) ("…most of the courts that have addressed the issue have correctly found that section 366(a) does not apply in a case where the pre-petition debt was incurred because of illegal use and tampering with utility services. It follows that a utility service is not prohibited under section 366(a) from requiring restitution of damages and lost services incurred as a result of post-petition illegal usage"). Therefore, the duties imposed by Section 366 on utility companies are inapplicable if the utility company proves that tampering and/or unauthorized utility usage occurred on the debtor's premises within a reasonable time period before the debtor's request for restitution of service. The rationale behind these decisions is primarily due to safety concerns due to the risks to the public that may stem from tampering with equipment and/or unauthorized utility usage. See In re Webb, 38 B.R. at 544-545; In re Scearce, 2005 Bankr. Lexis 2893, * 3- 4 (Bankr. S.D. Ohio 2005).

Section 366(b) establishes adequate assurance of payment for post-petition services in all cases, except for chapter 11 cases. "Section 366(b) has been read as an exception to the automatic stay, allowing a utility to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court." This subsection is "self-executing" and a proceeding by the utility is not required. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 366.03[1] (16th ed. 2015). However, if the parties disagree as to the requested adequate assurance, then after "notice and a hearing" the court may modify the amount of the deposit. Id. at 336.03[1].

-22-

Discussion

In the instant case, Plaintiff's complaint alleges that PRASA violated the automatic stay from August 26, 2014 to October 23, 2014 because it deprived Plaintiff of water service and continued threatening Plaintiff with fines and penalties as well as criminal proceedings. Plaintiff argues that PRASA's collection actions are post-petition, and are based on a pre-petition claim because Plaintiff commenced using the water service in his residence before filing for bankruptcy. Plaintiff further argues that any fines, penalties and costs PRASA is charging are all based on its alleged pre-petition claim of unauthorized water usage.

The court finds that the critical issue is fact intensive and evidentiary in nature, as the same hinges in determining whether the Debtor's water service was suspended due to tampering with the water meter or shutoff valve to obtain an unlawful water connection, or whether it was because of PRASA's negligence and/or oversight in handling Plaintiff's alleged multiple pre-prepetition requests for water reconnection as stated in his affidavit (Docket No. 1, Exhibit 1, pg. 19). Plaintiff alleges that the pre-petition requests to PRASA for transfer of water service were as follows: (i) on May 1, 2014, Plaintiff requested PRASA to transfer his water service contract from his previous residence at Berwin Estates, Calle 2C11, Rio Piedras, PR, to his new residence at 602 Blvd Media Luna Apt 4502, Terrazas Parque Escorial, Carolina PR; (ii) that on that day he paid the outstanding balance of $413.38 owed on the account, in order to transfer his water service account to the new residence; (iii) on May 19, 2014, Plaintiff contacted PRASA by phone, and it alleged having no knowledge of the request to transfer account, thus, Debtor reiterated the same; and (iv) on August 19, 2014, the Debtor contacted PRASA again by phone, to report an interruption in the water service of his home. He was informed that the service was interrupted due to a water line being repaired. PRASA alleges that it did not have knowledge of any request for transfer of his account, thus Debtor insisted again

on his transfer request. The water service returned that same night as informed by PRASA personnel (Docket No. 1, pg. 6, ¶¶ 19 & 20, and Exhibit 1- Affidavit). Contrary to Plaintiff's allegations, PRASA argues that Plaintiff's alleged request for transfer is not reflected in PRASA's records (Docket No. 64, pg. 7). The court notes that PRASA filed proof of claim #2-1 in the amount of $370.39 for pre-petition water and sewer service. PRASA attached to its proof of claim a listing of the activity for this particular account. On this list, there is a reconnection service charge ("cargo reconexión servicio") dated May 6, 2014 in the amount of $20. However, the particular charges in this list need to be further explained by PRASA.

The court is aware that Plaintiff appealed PRASA's August 26, 2014 administrative determination which references Section 6.11[3] of the Rules and Regulations for the Supply of Water and Sewer Service. Said administrative determination also references sections 3.02, 3.07-1b and 4.01 of the Code on Clandestine Intake and Discharge, Theft of Water, Alteration of Meters or other Accessories Property of the Aqueducts and Sewers Authority. Section 3.02 is titled, "Service Requests" and Section 3.07 is titled, "Clandestine Intake and Discharge, Activities regarding Water and Sewer Theft" ("Tomas y Descargas Clandestinas, Actividades Para Hurtar Agua o Alcantarillado"). Section 3.071-(b)[4] specifically regards opening the shutoff valve of the water service connection for an account/service that has been discontinued or suspended service/account (Docket No. 52-1). However, a final determination on Plaintiff's appeal appears to be still pending.

---

[3] Section 6.11 which is titled, Illicit Intakes and/or Discharges provides: "[a]ll illicit and/or discharge connections are hereby prohibited. Any person using an illegal intake and/or discharge connection shall pay the Authority the total estimated charges for aqueduct service and sewer discharges. A violation of this provision shall be sufficient cause for disconnecting said intake and/or discharge connection and decree the appropriate judicial procedures."

[4] Section 3.07-1(b) provides in the Spanish language: "Esta sección incluye las actividades que constituyen actos para hurtar agua o alcantarillado así como tomas y descargas clandestinas.
1- Acueductos:
    b- Abrir la llave de paso de la caja del contador en un servicio descontinuado o suspendido."

Conclusion

The only matter before the court is PRASA's motion to dismiss the instant adversary proceeding. The court finds that the Plaintiff has alleged sufficient facts, that if accepted as true, establish sufficient basis for the alleged violation of the automatic stay and entitlement to relief which this court has jurisdiction to entertain, given that 11 U.S.C. §362(k) creates an independent federal bankruptcy cause of action. See In re McMullen, 386 F. 3d at 331, fn 7. The court is not reviewing the legitimacy of PRASA's administrative procedures. The issue before the court is evidentiary and fact-specific in nature. Thus, whether PRASA violated the automatic stay pursuant to 11 U.S.C. §362(a)(1), (6) or if its actions were exempted by 11 U.S.C. §§362(b)(4) and/or 366(a) hinge upon whether the Debtor obtained an unlawful water connection.

In view of the foregoing, PRASA's motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) and for lack of subject matter jurisdiction is hereby denied.

The court hereby orders the parties to inform the status of the pending administrative appeal that was filed by Debtor a year ago. The Defendant is ordered to file its response to the complaint within twenty-one (21) days from the date that this Opinion and Order is entered.

SO ORDERED.

In San Juan, Puerto Rico, this 24th day of September, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge

-25-